IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ricky L. Hatcher, ) | Civil Action No. 6:11-cv-1319-RMG-KFM |
| ) Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Gregory Knowlin ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at the Turbeville Correctional Institution in the South Carolina Department of Corrections. The petitioner was indicted by the Marlboro County Grand Jury during the October 2006 Term of the Marlboro County Court of General Sessions for Distribution of Crack Cocaine (2006-GS-34-1091) and Distribution of Crack Cocaine Within ½ Mile Radius of a Park (2006-GS-34-1092) (R. on appeal 92-95). The petitioner was represented by Dan L. Blake, Public Defender for Marlboro County (Tr. 1-240). The State was represented by Assistant Solicitor Elizabeth Munnerlyn of the Fourth Judicial Circuit. On July 10-11, 2007, the petitioner was tried by a jury before the Honorable Edward B. Cottingham, Circuit Court Judge. He was found guilty on both charges (Tr. 234-35). The court sentenced the petitioner to 15 years confinement for the distribution of crack

cocaine conviction and 15 years confinement for the distribution of crack cocaine within ½ mile radius of a park conviction, to be served concurrently (Tr. 239).

## PROCEDURAL HISTORY

The petitioner was indicted on the drug charges after selling crack to an undercover informant ("Buyer") working with the Marlboro County Sheriff's Office on October 6, 2006. *State v. Hatcher*, 708 S.E.2d 750, 751 (S.C. 2011).

At trial, the Buyer testified that he met with two officers on October 6, 2006, in downtown McColl. *Id.* They searched the Buyer before providing him with $40.00 to make a drug purchase and fitting him with a concealed wire. *Id*. The Buyer went to the petitioner's residence and purchased two pieces of crack cocaine from him. *Id*. The two pieces were individually wrapped inside small pieces of plastic cut from the corners of a sandwich bag. The ends of the plastic were tied into knots. The Buyer estimated he was in the petitioner's residence for about three to five minutes before he left and delivered the crack to the officers, who were waiting nearby. *Id.* The Buyer identified State's Exhibit 1, which included the crack and two baggies, as being the items that he received from the petitioner. *Id*.

Sergeant Jeffrey Locklear of the Marlboro County Sheriff's Office testified that he and another officer, Investigator Brittany English, met the Buyer at 12:25 p.m. on October 6, 2006. *Id.* at 752. Locklear confirmed all of the details as testified by the Buyer. *Id*.

With respect to receipt of drug evidence, Sergeant Locklear testified that the Buyer gave him the crack, which was contained in "two tiny plastic corners" cut from sandwich bags and tied into knots. *Id.* Locklear placed the crack (still tied in their original packages) inside a plastic evidence bag and "sealed [it] with a glue-type seal." He stated the only way the bag could be opened is by cutting it open. *Id*. Locklear put identifying information on the bag, including the case number, the date of 10/06/06, the time of 12:39

p.m. when he retrieved the drugs from the Buyer, the approximate weight of the drugs, and that the purchase was made at Second Street in McColl from the petitioner. Locklear sealed this package inside a second bag produced by the South Carolina Law Enforcement Division ("SLED") specifically for the transportation of items to the SLED laboratory for testing. Locklear stated he personally transported the sealed evidence to SLED. *Id*.

Locklear testified that after the drugs were tested, the SLED agent processing the case repackaged the drugs in a heat-sealed bag (that must be cut open) and marked the bag with blue writing. *Id.* SLED agents returned the heat sealed bag to the sheriff's office. Locklear identified the heat sealed bag presented at trial as the same one that he had personally transported to the court that day. *Id*.

Marjorie Wilson, a SLED forensic scientist, testified as an expert in the analysis of controlled substances and stated that she was the person responsible for processing and testing the drug evidence in this case at SLED. *Id.*. Wilson stated she retrieved the evidence from the Log-In Department at SLED and that it was still sealed in a Best Evidence Kit (or bag).[1] *Id.* Wilson testified she broke the seal on the evidence bag and inside she found a second bag from the Marlboro County Sheriff's Department that contained "two clear plastic corner bags." Both of the plastic corner bags were still knotted, with a rock-like substance inside them. *Id*.

Wilson removed the substances from the corner bags and analyzed them before repackaging the contents into two Ziploc bags. *Id.* She placed the repackaged evidence into a heat-sealed pouch and wrote her initials on it and the date it was sealed of "5/04/07." She returned the pouch to SLED's Log-In Department, which then gave the

---

[1] Wilson explained that when an officer receives drug evidence, the officer places it in an envelope called a "Best Evidence Kit" on which is printed, "SLED Drug Analysis Security Envelope," and the seal on this envelope "is tamper evident," meaning any attempt to open that bag will be readily apparent to anyone looking at it. *Hatcher*, 708 S.E. 2d at 752 n.1. Wilson stated officers bring evidence to SLED in sealed containers, and it is logged in by the Log-In Department, which assigns containers of evidence unique SLED laboratory case numbers. *Id*.

3

evidence back to the Marlboro County Sheriff's Department. Wilson identified the SLED heat-sealed bag, which was still sealed and bore her initials, as the one she had returned to the SLED Log-In Department. She confirmed that it was in the same condition as when she had sealed it. *Id.*

The State moved for the admission of State's Exhibit 1, and defense counsel objected on the basis the chain of custody had not been sufficiently established. *Id.* The trial judge overruled the objection and admitted the drug evidence. Wilson then further testified that she had performed preliminary and confirmatory testing on the rock-like substances in State's Exhibit 1 and concluded that crack cocaine was in each of the two packages. Wilson confirmed that she performed her testing on May 4, 2007, and that she sealed the evidence with the notation, "MW, L0706559, Seal Intact," and the date, "05/04/07." She also placed identifying marking on the individual corner bags and on the Ziploc bags with the repackaged evidence. *Id*.

After his conviction, the petitioner timely filed a Notice of Appeal on July 17, 2007. On appeal, the petitioner was represented by Elizabeth A. Franklin-Best. In his Final Brief of Appellant, the petitioner raised two arguments. First, he contended the drugs should have been excluded because the chain of custody was incomplete. Second, he argued the trial judge erred by instructing the jury, with respect to the proximity charge, that the State had to prove the evidence "to your satisfaction." The State was represented by Senior Assistant Attorney General Harold M. Coombs, Jr. Oral argument was heard on May 27, 2009.

In a published Opinion filed August 5, 2009, the South Carolina Court of Appeals reversed the petitioner's conviction and remanded his case for a new trial[2] (App. 1-7). First, the Court of Appeals noted the petitioner's first issue, which was the chain of

---

[2] *State v. Hatcher*, 681 S.E.2d 925 (S.C. Ct. App. 2009).

custody issue, was sufficiently preserved for appellate review (App. 4). Then, the Court of Appeals found the chain of custody was not sufficiently completed. The Court of Appeals noted Officer Locklear and Agent Wilson both acted as custodians of the evidence (App. 4). However, neither is directly linked to the other by testimony or documentary evidence. The party who received the evidence at SLED was not identified, and the State presented no testimony regarding how the evidence was handled while in Officer Locklear's possession or once it was surrendered at SLED. Officer Wilson testified she received the evidence from the Log-In Department, but that is the extent of her testimony regarding how the evidence came to be in her custody (App. 4-5). The record does not reveal the date the evidence was left at SLED or where it was stored pending Officer Wilson's receipt and analysis more than eight months after the undercover drug buy. *Id*.

The court noted that while chain of custody is only required to be established as far as is reasonably practicable, South Carolina courts have consistently held that all persons in the chain of custody must be identified and the manner of handling the evidence must be demonstrated (App. 5).

The confidential informant ("Buyer"), Officer Locklear, and Officer Wilson all testified the drug evidence had not been tampered with between its procurement from the petitioner and its receipt and analysis. However, the court noted that evidence the drugs had not been tampered with is not sufficient to overcome missing links in the chain of custody (App. 6) (citing *State v. Chisolm*, 584 S.E.2d 401 (S.C. Ct. App. 2003) (overruled on other grounds by *State v. Taylor*, 598 S.E.2d 735, 739 (S.C. Ct. App. 2004)). The court noted that in *Chisolm*, the trial court admitted drug evidence when the State offered no testimony or affidavit from the two custodians in the chain of custody between the investigating officer and the analyst (App. 6 (citing *Chisolm*, 584 S.E.2d at 403)). The court found that just as in *Chisolm*, the trial court in this case relied on the lack of proof that the

evidence was somehow tainted. However, that alone was not enough to establish a sufficient chain of custody (App. 6).

The Court of Appeals noted the case before it was distinguishable from the line of cases in which the identity of the custodian and method of handling were known but the manner of handling was irregular in some respect. In such cases, evidence may be admissible with any irregularities going to the weight of the evidence as opposed to its admissibility. Therefore, based on the application of chain of custody law in the aforementioned cases, the Court of Appeals found the State did not establish a sufficient chain of custody and the drug evidence should have been suppressed (App. 6-7). The Court of Appeals declined to address the petitioner's second issue because of its reversal of the petitioner's conviction on the first issue (App. 7).

Subsequently, the State filed a Petition for Rehearing and Suggestion for Rehearing En Banc on August 7, 2009 (App. 8-11). On September 17, 2009, the South Carolina Court of Appeals filed an Order Denying Petition for Rehearing En Banc (App. 12-13). In the Order, the Court of Appeals stated that after a careful consideration of the Petition for Rehearing En Banc, it had determined that en banc consideration was not necessary to secure or maintain the uniformity of its decisions, nor was the proceeding one involving a question of exceptional importance (App. 12). Further, the Court of Appeals found no other ground appearing to warrant a rehearing en banc. It was, therefore, ordered that the Petition for Rehearing En Banc be denied. The Court of Appeals also filed an Order Denying Petition for Rehearing on September 17, 2009 (App. 14-15). In the Order, the Court of Appeals stated that after a careful consideration of the Petition for Rehearing, it was unable to discover that any material fact or principle of law had been either overlooked or disregarded and hence, there was no basis for granting a rehearing (App. 14). It was, therefore, ordered that the Petition for Rehearing be denied.

On October 6, 2009, the State filed a Petition for Writ of Certiorari. In the Petition, the State raised two arguments. First, the State contended that when the record shows that the trial judge has applied the correct law and the record supports his discretionary ruling, it should not be set aside based upon concerns raised for the first time on appeal, even when the appellate court may think that additional evidence would have made a more thorough record. Second, the State contended the appellate court should not address a complaint about the jury charge when the defendant does not show how at trial he raised the matter and secured a ruling. The petitioner filed a Return to the Petition for Writ of Certiorari on November 3, 2009.

In an Order filed July 22, 2010, the South Carolina Supreme Court granted the State's Petition for Writ of Certiorari. The Court further ordered the parties to serve and file the appendix and briefs as provided by Rule 242(i), SCACR. The State filed its Brief of the petitioner on October 12, 2010. In the Brief, the State raised two arguments. First, the State argued the trial judge found that the State established a substantial chain of custody. The finding was supported by the record and the applicable law and should have been affirmed. Second, the State contended the appellate court should not address a complaint about the jury charge when the defendant does not show that he raised the matter to the trial judge and secured a ruling. The petitioner filed his Final Brief of Respondent on November 8, 2010. In the petitioner's Final Brief, he asserted two arguments. First, he contended the trial court judge erred by not excluding the drugs from evidence when the state failed to prove the chain of custody by failing to offer any evidence regarding who received the evidence at SLED and how it was handled while in Officer Locklear's possession or once it was surrendered at SLED. Second, the petitioner contended the trial judge erred by instructing the jury, with respect to the proximity charge, that the State had to prove the evidence "to your satisfaction." Argument was heard on February 16, 2011.

In a published Opinion filed March 21, 2011, the South Carolina Supreme Court reversed the opinion of the South Carolina Court of Appeals.[3] In its Opinion, the Supreme Court noted it had long held that a party offering into evidence fungible items such as drugs or blood samples must establish a complete chain of custody as far as practicable. *Hatcher,* 708 S.E.2d at 753 (citing *State v. Sweet*, 647 S.E.2d 202, 205 (S.C. 2007)); *see also Benton v. Pellum*, 100 S.E.2d 534, 537 (S.C. 1957) (stating "it is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence").

The court further stated, "'Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.'" *Hatcher*, 708 S.E.2d at 753 (quoting *Benton*,100 S.E.2d at 537). "'Testimony from each custodian of fungible evidence, however, is not a prerequisite to establishing a chain of custody sufficient for admissibility.'" *Id.* (quoting *Sweet*, 647 S.E.2d at 206). "'Where other evidence establishes the identity of those who have handled the evidence and reasonably demonstrates the manner of handling of the evidence, our courts have been willing to fill gaps in the chain of custody due to an absent witness.'" *Id*. (quoting *Sweet*, 647 S.E.2d at 206). "'Proof of chain of custody need not negate all possibility of tampering so long as the chain of possession is complete.'" *Id.* (quoting *State v. Carter*, 544 S.E.2d 835, 837 (2001)). "'In applying this rule, we have found evidence inadmissible only where there is a missing link in the chain of possession *because the identity of those who handled the [substance] was not established at least as far as practicable*.'" *Id*. (emphasis added in opinion) (quoting *Carter*, 544 S.E.2d at 837).

---

[3] *State v. Hatcher*, 708 S.E.2d 750 (S.C. 2011)

8

"In finding the chain of custody insufficient in the petitioner's case, the Court of Appeals stated that 'Officer Locklear and [SLED] Agent Wilson both acted as custodians of the evidence," but "neither is directly linked to the other by testimony or documentary evidence.'" *Id.* (quoting *Hatcher*, 681 S.E.2d at 927-28). Specifically, the Court of Appeals stated that the person who received the evidence at SLED was not personally identified and there were no details presented about how the evidence was handled while in Officer Locklear's possession or once it was surrendered at SLED. *Id*. (citing *Hatcher*, 681 S.E.2d at 928). The Court of Appeals acknowledged that South Carolina case law provided that the chain of custody need be established only "as far as is reasonably practicable" and that each person who handled the evidence was not required to testify, but nevertheless stated that "South Carolina courts have consistently held that all persons in the chain of custody must be identified and the manner of handling the evidence must be demonstrated." *Id*. (quoting *Hatcher*, 681 S.E.2d at 928).

The Supreme Court noted that the Court of Appeals relied in large part upon the opinion in *State v. Chisolm*, 584 S.E.2d 401 (S.C. Ct. App. 2003), in which it effectively held South Carolina law requires every individual who handled the evidence to be specifically identified, either by providing testimony under oath or producing sworn statements pursuant to Rule 6(b), SCR CrimP. *Hatcher*, 708 S.E.2d at 753 (citing *Hatcher*, 708 S.E.2d at 753). The Court of Appeals, sitting en banc, subsequently overruled *Chisolm* in *State v. Taylor*, 598 S.E.2d 735, 739 (S.C. Ct. App. 2004), stating that, "'[t]o the extent [*Chisolm*] can be read to require the testimony of each person in the chain of custody under all circumstances, it is inconsistent with the precedent established by our supreme court, and is hereby overruled.'" *Hatcher*, 708 S.E.2d at 753 (quoting *Taylor*, 598 S.E.2d at 739).

The Supreme Court noted that although the petitioner asserted that the cases held all individuals must be identified without exception, this appeared to be an extrapolation of the general observation that where all individuals in the chain are, in fact,

9

identified and the manner of handling is reasonably demonstrated, it is not an abuse of discretion for the trial judge to admit the evidence in the absence of proof of tampering, bad faith, or ill-motive. *Hatcher*, 708 S.E.2d at 753-54. The court further noted that in a case involving the chain of custody of a blood sample in a paternity case, the Supreme Court reiterated the standard set forth in *Benton v. Pellum* that the chain of custody must be established as far as practicable, and the Supreme Court specifically stated that "we have never held the chain of custody rule requires every person associated with the procedure be available to testify or identified personally, depending on the facts of the case." *Id*. at 754 (citing *South Carolina Dep't of Soc. Servs. v. Cochran*, 614 S.E.2d 642, 646 (S.C. 2005)). In *Cochran*, the Supreme Court found the chain of custody was sufficient even though the courier who transported the samples from the collection site to the testing facility was never identified, where "'the samples arrived at the testing facility sealed and intact.'" *Id.* (quoting *Cochran*, 614 S.E.2d at 646). The court in *Cochran* noted that "'[w]hether the chain of custody has been established as far as practicable clearly depends on the unique factual circumstances of each case.'" *Id.* (quoting *Cochran*, 614 S.E.2d at 646 n.1).

> The Supreme Court in *Hatcher* noted that "'[i]t is unnecessary ... that the police account for 'every hand-to-hand transfer' of the item; it is sufficient if the evidence demonstrates a reasonable assurance the condition of the item remains the same from the time it was obtained until its introduction at trial.'" *Hatcher*, 708 S.E.2d at 754 (quoting *State v. Price*, 731 S.W.2d 287, 290 (Mo. Ct. App. 1987)). The court further stated that "'[t]o expect the [prosecuting authority] to produce every possible individual who may have had fleeting contact with the evidence would cause unnecessary logistical problems concerning chain of custody.'" *Id.* (quoting *Commonwealth v. Herman*, 431 A.2d 1016, 1019 (Pa. Super. Ct. 1981)). The Supreme Court noted that "[c]ourts have abandoned inflexible rules regarding the chain of custody and the admissibility of evidence in favor of a rule granting discretion to the trial courts." *Id*. (citing *United States v. De Larosa*, 450 F.2d 1057, 1068

10

(3d Cir. 1971)). "'The trial judge's exercise of discretion must be reviewed in the light of the following factors: ... the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.'" *Id.* at 754-55 (quoting *De Larosa*, 450 F.2d at 1068).

Considering those factors here, the Supreme Court found no abuse of discretion in the trial judge's admission of the drug evidence in the petitioner's case. *Id.* at 755. The Supreme Court agreed with the Court of Appeals that the mere fact that evidence was sealed upon presentation for testing did not, in itself, establish a sufficient chain of custody. Evidence was still required as to how the item was obtained and how it was handled to ensure that it was, in fact, what it was purported to be. However, the Supreme Court had consistently held that the chain of custody need be established only as far as practicable, and the Supreme Court reiterated that every person handling the evidence need not be identified in all cases. *Id*.

In this case, the Buyer who purchased the drugs from the petitioner, the police officer who received the drugs from the Buyer and transported them to SLED in two sealed, tamper-evident bags (one inside the other), and the SLED agent who retrieved the drugs from the Log-In Department at SLED (still double-sealed) and tested them, all testified about the chain of custody and their handling of the drugs and the fact that there was no evidence of tampering. *Id.* The ultimate goal of chain of custody requirements is simply to ensure that the item is what it is purported to be. The Supreme Court found that the record here indicated the drugs received for testing were in fact, those taken from the petitioner without any alteration, tampering, or substitution. *Id*.

The Supreme Court in *Hatcher* held that the State need not establish the identity of every person handling fungible items in all circumstances; rather, the standard is whether, in the discretion of the trial judge, the State has established the chain of custody as far as practicable. *Id.* The Supreme Court concluded the trial judge did not abuse his

11

discretion in finding a sufficient chain of custody existed to allow admission of the drug evidence. *Id.*. Consequently, the Supreme Court reversed the decision of the Court of Appeals. *Id*.

In a footnote, the Supreme Court noted an issue concerning the trial judge's charge on reasonable doubt was also raised in the briefs. *Id.* at 755, n.2. The Court of Appeals did not reach this issue due to its reversal based on the chain of custody. Counsel for the petitioner conceded at oral argument that the trial transcript revealed no objection was made at trial to preserve the jury charge issue for the Supreme Court's review. The Supreme Court agreed based on its review of the record. *Id*. The Remittitur was issued on April 6, 2011.

The petitioner filed an Application for Post-Conviction Relief ("PCR") on July 18, 2011 (2011-CP-34-150). In the Application, the petitioner asserted he was being held in custody unlawfully because of ineffective assistance of counsel. Specifically, the petitioner alleged his counsel was ineffective in failing to object to the trial judge's instructions to the jury and failing to object to the trial judge's reference to crack cocaine when the current law calls it cocaine base. As of August 4, 2011, the date of the filing of its Return to the Petition fo Writ of Habeas Corpus, the State had not filed its Return to the PCR application.

In the federal habeas action now before this court, the petitioner alleges (verbatim):

> **Ground One**: Violation of Fourteenth Amendment of the US Constitution (Due Process Violation)
>
> **Supporting facts**: The trial court judge erred by not excluding the drugs from evidence when the state failed to prove the chain of custody by failing to offer any evidence regarding who recieved[sic] the evidence at SLED, how it was handled while in Officer Locklear's possession or once it was surrendered at SLED.

12

>**Ground Two**: Due Process Violation
>
>**Supporting facts**: the trial judge erred by instructing the jury with respect to the proximity charge, that the State had to prove the evidence "to your satisfaction."

(Pet. at 6-7).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759

13

F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of

14

>    legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Ground One*

In the first ground for relief, the petitioner argues that his due process rights were violated as a result of the trial court not excluding the drugs from evidence where the chain of custody was not properly established. The respondent first argues that this ground was procedurally defaulted in state court. The respondent acknowledges that the petitioner objected at trial to the admission of the drugs utilizing an argument regarding chain of custody. However, the respondent notes that the petitioner did not assert his objection on the basis of a due process violation. As discussed at length above, the petitioner raised the chain of custody issue on direct appeal to the Court of Appeals of South Carolina, and the Supreme Court of South Carolina ultimately found the trial court did not err in admitting the evidence.

In his response in opposition to the motion for summary judgment, the petitioner states that he wishes to withdraw his federal petition until he has exhausted his remedies in state court. He states that he has timely filed a PCR in state court to "correct this . . . error" (pet. resp. m.s.j. at 2). However, the petitioner has not raised any post-conviction type grounds in his federal petition, so an application for PCR is not necessary

15

for him to exhaust state remedies. *See Green v. Lindler*, No. 93-6228, 1993 WL 177755, at *1 (4th Cir. May 27, 1993). Freestanding claims such as those raised by the petitioner here must be raised at the trial level and then on direct appeal. *See Drayton v. Evatt*, 430 S.E.2d 517, 520 (S.C. 1993) ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel."). This court finds that the petitioner adequately exhausted Ground One and it is not procedurally barred; however, the claim fails on the merits.

Admissibility rulings will support the grant of habeas relief only when the alleged error infringes upon a specific constitutional right or is so prejudicial that it amounts to the denial of due process. *See Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988). "The question of whether or not a chain of custody has been shown is one of state law, and state law questions are not very often the basis of constitutional error under habeas review." *Scott v. Jones*, 915 F.2d 1188, 1189 (8th Cir.1990). Because federal habeas review is confined to errors of constitutional dimension, an issue concerning the mere admissibility of evidence under state law is not cognizable. *Ball v. Wyrick*, 547 F.2d 78, 79 (8th Cir. 1977). *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding "a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law"). The issue then is not whether the trial court erred in admitting the evidence, but whether its admission resulted in a trial so fundamentally unfair that the petitioner was denied due process of law. *See Rainer v.Dep't of Corrections*, 914 F.2d 1067, 1072 (8th Cir.1990) (citing *Hobbs v. Lockhart*, 791 F.2d 125, 127-28 (8th Cir. 1986)).

The petitioner has not shown that the admission of the drug evidence resulted in a trial so fundamentally unfair that he was denied due process of law. Accordingly, Ground One should be dismissed.

*Ground Two*

In his second ground for relief, the petitioner asserts that his due process rights were violated because the trial judge allegedly erred by instructing the jury with respect to the proximity charge that the State had to prove the evidence "to your satisfaction." The petitioner raised this claim on appeal, but his appellate counsel later conceded the claim was not preserved at trial. *See Hatcher*, 708 S.E.2d at 96 n.2.[4] "An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review." *State v. Nichols*, 481 S.E.2d 118, 120-21 (S.C. 1997) (citing *State v. Hudgins*, 460 S.E.2d 388 (S.C. 1995)).

If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) ) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011).

The petitioner has expressed no particular cause for procedurally defaulting on this ground. A petitioner may establish a fundamental miscarriage of justice by showing

---

[4]After finding that the trial judge did not abuse his discretion in finding a sufficient chain of custody, the Supreme Court of South Carolina noted that the additional jury charge issue had been raised in the briefs. The court stated as follows:

> The Court of Appeals did not reach this issue due to its reversal based on the chain of custody. Counsel for Hatcher conceded at oral argument that the trial transcript reveals no objection was made at trial to preserve the jury charge issue for our review. We agree based on our review of the record, and we appreciate counsel's candor in this regard.

*Hatcher*, 708 S.E.2d at 96 n.2. *See* Tr. 209, 211-12.

17

that a constitutional error probably resulted in the conviction of one who is actually innocent. In order to raise a claim of actual innocence, a prisoner "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The petitioner has made no such showing here. At trial, two officers who monitored the drug purchase testified about the circumstances surrounding the purchase (Tr. 33-40, 87-106), and the informant who made the purchase from the petitioner also testified (Tr. 47-74). The audiotape from the wire worn by the informant was also played for the jury (Tr. 71-72), and one of the investigators testified that the petitioner's home was located 4/10 of a mile from a park (Tr. 108). The items purchased from the petitioner were determined to be .36 grams of crack cocaine (Tr. 120-21). Based upon the foregoing, the claim is procedurally barred.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 15) be granted.

                                              s/ Kevin F. McDonald
                                              United States Magistrate Judge

January 26, 2012
Greenville, South Carolina